I'll call the third case today, case number 24-1055, Scheer v. Sisters of Charity. Good morning. May it please the Court, my name is Ralph Lamar and I represent Bethany Scheer, the appellant in this matter. What I'd like to do first is start off by explaining that I have surrendered five minutes of argument to Carla Gilbride of the EEOC and I would like to reserve two minutes of rebuttal if I may. Thank you. Your Honor, we are asking that the district court's decision granting summary judgment to SEL Health be overturned, reversed, and sent back on remand for it to make any other findings, excuse me, that it feels important. Its decision was that Ms. Scheer had not shown that there was a materially adverse employment action in being mandated to attend and be part of an EAP program and to sign a release that would allow SEL to know whether she was complying with the forced treatment plan that SEL was going to put together with the EAP program and she was also suspended without pay and fired. Shortly after the appeal was filed, the U.S. Supreme Court held in Muldrow v. the City of St. Louis that the standard that the courts had been following for the past 40 plus years was inappropriate. It was not supported by the language of the statute and the only standard to be used now is whether there's any injury to the individual. It doesn't have to be a materially adverse employment action. And the specific case that Judge Domenico relied upon in granting summary judgment was Sanchez v. Denver Public Schools and that case was specifically abrogated by the U.S. Supreme Court in the Muldrow opinion. So at this point in time, based upon that, we would ask for a summary reversal, but if the court has questions and want to know about any of the other issues before it, I'd be happy to answer any of the questions. Is your case wholly reliant on the proposition that pretext is not a question because you don't use McDonnell Douglas? Exactly, Your Honor. And it started back with Morgan v. Hilty in this court. So are you in trouble if the determination is that McDonnell Douglas is applicable? Because whereas you may have shown a primary case, there is no direct evidence. It's all circumstantial. Does that mean you lose? It does, Your Honor, but that decision would be wrong. I know, okay. I understand that. I'm sorry. If we determine McDonnell Douglas applies, do you lose? Yes. Okay. Can you help me then just understand, I mean, obviously you say this case applies and we're done, is your argument correct? Yes, Your Honor. Can you help me understand how the facts of that case mirror, I guess, in your argument, the facts here? The standard that the court utilized was that being forced to undergo treatment by your employer when there wasn't any factual basis for it, it was based on a false premise, did not constitute a materially adverse employment action. And the Supreme Court said that's not the standard. The standard is whether there's any injury. So if the district court utilized the wrong standard, in fact the district court's opinion even suggested that upon remand it will find that there was an injury, because it went to the point of saying it sympathized with Ms. Scheer in her concern about being forced to undergo therapy and treatment based upon something that there was no support for. Now the district court did make some errors by suggesting that there was no evidence in the record that suggested that they would share the information. But what the district court didn't acknowledge in its opinion was that the testimony from Daryl Gedney, who was the therapist who did ultimately end up treating Ms. Scheer, Ms. Gedney had been a consultant for an EAP in the past. And when a mandatory referral is made, the employer actually talks to the consultant at the EAP and sets up a treatment plan. So it's actually designed by the employer. So the employer tells EAP, this is why we're sending her to you. Now they didn't have any statements from any of the witnesses. They claim she was suicidal. Ms. Scheer strongly objects to that and says, no, I never said anything that was suicidal. And one of the purported witnesses they based this referral on specifically denies ever telling SEL that Ms. Scheer said anything of a suicidal nature. So they completely skipped the idea, which is built into the statute of having a medical exam. So there are a number of cases that deal with medical exams. And I don't know if I'm pronouncing it correctly or not, but N. Zeer from the District Court of Columbia, one of the reasons why that didn't end up in the plaintiff's favor was that they did a medical exam, and the psychiatrist or the psychologist said that he had serious issues. And the employer's response was, when he's done getting his treatment and when he's released, he can come back to work, which is what SEL could have done here. If they had a good faith belief that she was suicidal, they could have said to her, we're going to set up for you an eval by somebody. And once the eval is done, we'll review the information, and then we'll determine whether we're going to send you to EAP, but they didn't do that. Isn't N. Zeer, which the district court relied on here, isn't it also subject to question following Muldrow? Every single one of them is, Your Honor. Well, sure, but you seem to be distinguishing it based on its facts. Do you even need to do that? Because in that case, the court relied on a standard of materially adverse actions. So that also is no longer good. You are correct, Your Honor. Isn't that the simple way to distinguish it? It is. The easiest way is to say that all of the cases in the past that required a materially adverse action are no longer, should no longer be considered. But I'm trying to also make factual distinctions that make it clear that what SEL did here, sending it back, the court can certainly make a determination whether she was injured, but that's its first determination because it didn't do that at summary judgment. And this court's practice is to send cases back to have the court make a determination on something that it didn't do initially. But I see my time is up. I'm going to... There's other... I'm sorry, go ahead. Your time is up. I apologize. Go ahead. Thank you. Good morning. May it please the court. Carla Gilbride with the Equal Employment Opportunity Commission. There are two independent grounds on which this court can and should reverse the district court's grant of summary judgment. Ms. Gilbride, using your left hand, there's a microphone. Could you pull it down so it's close to your face? There, that helps. Thank you. Yes. The first, as discussed by Mr. Lamar, relates to the quantum of harm Ms. Scheer must show to the terms, conditions, and privileges of her employment. The second regards the causal chain from her perceived disability to her ultimate termination. Quickly addressing the quantum of harm, the district court, in discussing other cases, such as the one with the District of Columbia Court on EAP referrals, said because the referral here was mandatory, the needle moved closer to the line of adverse employment action but still didn't quite cross it. But the line the district court was analyzing there was the line established in Sanchez versus Denver Public Schools, which was expressly abrogated by name in the Supreme Court's Muldrow decision. And the Supreme Court in footnote two of Muldrow said many cases under this standard of some harm to an identifiable term condition of employment will come out differently, and claims that failed under a significant standard should now succeed. We submit this is one of those cases that was analyzed under a significant standard and should now succeed under the Muldrow standard. The question of what exactly is the harm here and how does it map on, there were two harms from the mandatory referral combined with the mandatory release of medical information, which was a required condition of her continued employment. First, she lost the freedom to engage in therapy on her own terms with a therapist of her own choosing, on her own schedule, and the terms were set by her employer. And then significantly, she lost the ability to have, you know, trust in the privacy of her medical information not being shared with her employer. Specifically in the deposition testimony of the counselor at pages 149 to 150 of the joint appendix, there was a discussion of whether information about what appointments she attended would be shared with the employer, including for a one-year period, if she stopped going to therapy under the EAP program and then at some point in the future resumed therapy, the employer would be notified that she had begun going again, which would give them information about her medical, you know, her mental health and her mental health treatment that she preferred to keep private. And those sorts of concerns around medical autonomy, privacy, and confidentiality of medical information were in the sights of Congress and were particular concerns animating the passage of the ADA. And speaking of the ADA, you know, lest there's any question of whether the Muldrow opinion applies to the ADA, we submitted a letter of supplemental authority pointing to decisions from the First and Eleventh Circuit where the identical statutory language from Title VII, analyzed in Muldrow, was applied to the ADA, and certainly that's consistent with this court's in-bank decision in Ex Bistoli, finding the language in those two statutes to be identical. And turning quickly to the causation issue, which is- There's actually just one combined adverse action here. Because we have the mandatory EAP referral, we have the FMR form, the release that was mandatory for her to sign or she would be discharged, and then we actually have her termination for not signing the release. How do you see those three different events as part of one combined adverse action? Our position is that the mandatory EAP referral in and of itself was an adverse action. That's the thing that the district court said was a close call under the pre-Muldrow significant change to employment status test. And then where we believe the district court erred, even under the existing state of the law, was in its analysis that when she declined to sign the FMR release, that broke the causal chain and relied on Jenkins for that proposition, that her refusal to sign was an independent cause of her termination. It was not. The causal chain began- She would not have been put in the position of having to sign a release that she was concerned infringed upon her privacy if that was not- That condition of the release was a mandatory condition of the EAP referral, which was also mandatory. And so that choice would not have been put to her, but for SCL deciding she needed to go to a mandatory EAP counseling and that this release of medical information was attendant to that mandatory referral. And none of that would have happened but for SCL perceiving her as having a mental impairment, which it admits was a cause of its decision to require her to attend counseling. So the causal chain- Counsel, I need to interrupt you and just let you know there's one and a half minutes left, but I'll make it two whenever you just finish closing up your remarks. If you want to pass on back to your- back to plaintiff's counsel. I do. And let me just finish this thought. There's a causal chain which begins with her perceived disability continues directly through the EAP referral and release directly to her termination. In Jenkins, there was an unbroken causal chain there, too, from a dispute between coworkers to a mandatory EAP referral to termination. But a dispute between coworkers is not a trait protected by federal civil rights law. Perceived disability is such a protected trait, and because the root of the causal chain here was Ms. Scheer's perceived disability, all of the adverse actions flowing from that root of the causal chain cause her regarded as claimed to survive summary judgment. The issue should have been presented to the jury, and that is the independent reason why the summary judgment should have been reversed, even separate from the Muldrow issue. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is David Gartenberg for SCL Health. With me is Kelsey VanOverloop, who's on the briefs. While I might touch on some other issues in the case, I'd like to focus on the question of whether Ms. Scheer faced an adverse employment action here, including under the Supreme Court's test in Muldrow, which was issued after the district court's opinion awarding SCL summary judgment. I think that there are three possible adverse actions at issue here, and I'd like to address each one of them for you today. The three are, the first is the mandatory nature or the required nature of the EAP referral itself. The second is the release of information contained in the FMR form, and the third is what Ms. Gilbride's closing comments related to is on the termination of employment itself. There's no question a termination of employment is an adverse employment action. I think there's a large question about whether the first two categories are. The district court held that none of these are adverse employment actions, but it did apply the significance test that Muldrow abrogated in, that was abrogated in Muldrow. But we still have a test to apply. What Muldrow stood for is that an employee on an employment discrimination theory needs to show some sort of harm, something that left the employee worse off than they had been otherwise. And the issue for Scheer is that even under this test, she has no evidence of a harm that she faced by any of these adverse actions because of her disability. Being sent by your employer to mandatory counseling, being told that you must sign a release, forced to sign a release, to reveal if you go to that counseling and whether you go to your treatment, any follow-up appointments that are scheduled for treatment, or you will be terminated under threat of termination, is not adverse under the modified Muldrow test. It's basically some harm or, I mean, I struggle to understand your argument on that. Maybe you could explain.  So my argument arises both under the law and under the facts of this case, as borne out by the record. Muldrow, Justice Alito in his concurring opinion in Muldrow, made clear that not everything that an employee disagrees with or doesn't want to do is necessarily an adverse employment action, something that... Certainly, but why isn't this an adverse employment action? Well... I'm not suggesting that every case will result in a finding of an adverse action. That's not at all what I'm saying, and I don't think that's what the Supreme Court intended in Muldrow. For a few reasons. The first is nothing about the mandatory referral impacted the terms and conditions of her employment. The referral was free. The referral was completely confidential with the exception of the very limited information that was going to be released to the... She was forced to go or be terminated. I don't know how you can suggest that didn't impact the terms and conditions of her employment. So let me spend a moment responding to that directly and then talking about the facts in the record, because I think that those are significant and it's a piece of what the district court's opinion was premised on as well. Let's say instead of mandatory counseling, we call this coaching, which is something that happens all the time. An employee has bullying behavior at the workplace, is upsetting other people, is exploding. The employer says, you need to go to meet with a coach. You need to meet with a counselor to address this sort of behavior. This behavior is causing disruption. It's impacting your performance and the performance of others. The employee might say, I'm fine. I don't think I need this coaching. I don't want to go to this. This is a pain. That doesn't mean that it's an adverse employment action at all. And the cases that are cited in our briefing, Nadeer, Weaver, Watters, they're all pre-mojo cases, but they don't turn on whether the action was significant. They just say that this type of referral is not an adverse action at all. And this isn't in the briefing, but we were thinking in preparing for the oral argument about, what about mandatory training? Exclusion from training can be an adverse employment action. Of course, we're not talking about training. We're not talking about a weekly meeting. We're talking about personal therapy, personal counseling, and we're talking about a threat of discharge if you don't release that information about your personal medical. Well, the only information. About the counseling. And why isn't that private? Whether you go to or attend counseling, whether once you have a treatment plan, you partake in that plan. Why isn't that? So that was the only information that was going to be released. It's basically, yes or no, is the person attending their appointments, and yes or no, are they adhering to the plan? No other information was going to be released. That's clear in the record, page 810 of the record there. So I do think that's clear, because we would be in a different land if the employer was getting information about what her diagnoses was, what the treatment plan actually was. That would bring us into 12112D of the ADA, which relates to medical examinations. Ms. Scheer has been clear that she does not have a medical examination claim here. But I do want to focus on what the record actually says, right? Because Ms. Scheer, so the mandatory referral was contained in a performance improvement plan that Ms. Scheer signed. She agreed to go to the mandatory EAP in that form. She also alleges in her complaint that she was not opposed to seeing someone to be evaluated. She says in her deposition. Well, terribly. She never said she was. That's totally different to say you're not opposed to seeing someone on your own for whatever purpose is totally different than being mandated by your employer under threat of termination, isn't it? I don't think it is. If the test is you need to show some harm. Where is the harm if the employee says, I agree with you that I need to see somebody. I don't like that you're telling me I need to. But I agree that I need to see somebody. And she's very clear about that. She says in the deposition, I was saying I'm not opposed to seeing somebody at the EAP. I did not agree with what was in the form. So her gripe here is very limited. That's what the record supports. That it was with the form itself, not with the concept of going to the EAP. And here's the real kicker, which the district court focused on in its opinion, is after all, her employment does end. And what does she do that very same day? She goes to the EAP. And she continues treatment with the EAP on her own accord. You're right. She wasn't doing it voluntarily. So that's the only distinction. But if the test here is some harm, the test isn't whether something is voluntary or involuntary or required or forced. The test is, was there harm in the record? Now, one thing that the court might be thinking about is the district court did, after all, apply a test that was abrogated under Muldrow. They have this significant test. Why don't we just remand back to the court in these circumstances since the wrong test was applied? Well, there's a number of reasons for that. Number one, as was addressed in the prior oral argument, is that we can affirm on any basis that's in the record. But number two is, there have been a number of cases since Muldrow, circuit court cases, that have been faced with the exact same issue that this court is faced with. The district court applied the wrong or the abrogated adverse action standard, and the court instead of remanding, or the courts instead of remanding, still looks at the facts in the record and makes an analysis of whether there's some harm. The one that's cited in our brief is Phillips v. Baxter, which I think is an important case. It was a reassignment case, similar to the facts of Muldrow, which was a transfer case. In that case, the employee argued that the district court wrongly decided there hadn't been an adverse action under the facts of that case. And the facts of that case were, the employee was reassigned to a different office on a different floor, but in the same building. There were some computer issues that the employee claimed was an adverse employment action. And the court said, sure, the district court applied the pre-Muldrow standard, but there's still no harm here. Yeah, I think we can distinguish being reassigned to a different office from being sent to mandatory counseling under threat of termination for being apparently suicidal, or in comments to colleagues, they believe that she might be suicidal, not a work-related matter. I think there's a distinction there, don't you? I would agree that there's a distinction there. The point that I was making, though, is that we don't need to remand simply because the district court applied the pre-Muldrow standard. And other circuit courts have held the same. These weren't in our briefing. One is a very recent decision. The 11th Circuit in Luckey v. MetLife was faced with the exact same situation. And another is the 6th Circuit in Blick v. Ann Arbor Public School District. These are all cases that- Can you file a 28-J letter? We absolutely can. Thank you, Your Honor. I think I'd close or spend the remaining portion of my time addressing two other issues. Number one is the termination itself, is whether the termination was an adverse employment action. Now, this question doesn't implicate Muldrow at all, because it turns on just whether the termination was because of the disability, or because of being perceived as being disabled. And I don't think that there is sufficient evidence in the record or argument before the court for the court to conclude that summary judgment was improperly awarded to SEL on this basis. There's no question, and there's, in fact, record evidence directly contradicting it from everybody, from all the decision makers and Ms. Scheer herself, that her employment wouldn't have ended had she complied with the terms of the PIP. There was no discussion about her employment ending. The only reason that her employment ended is because, although she signed the PIP, she then said, I'm not going to sign the authorization form. So that is an intervening cause here, okay? And there's case law holding exactly this in the exact same circumstance. There's Patton v. Ingalls, which is a Southern District of Mississippi case. There was another case that actually is, I think, the closest factually to what we're dealing with here, which is the Eustis case from the Southern District of New York. The reason I say it's the closest factually is because, in that case, the employee agreed to go to the EAP but refused to sign the form. Okay? This is a pretty nuanced situation, but it's the same one that we're dealing with here. In all of these cases, the court said that's insubordination. Okay? That is an adverse action because termination is one of the quintessential adverse actions. But it's not termination or an adverse action because of the disability. The district court agreed with that formulation, and nothing in Muldrow disturbs it. Now, here's the last point, which Judge Murphy was focused on in his questions, which is, even if you disagree, even if you held that the mandatory referral in this circumstance, under this record, was an adverse employment action. I don't think it should. But even if you did, all that we have there is a prima facie case of disability discrimination under the McDonnell-Douglas standard. There is no evidence, no direct evidence of discrimination, of discriminatory animus here. Okay? Even the PIP itself doesn't say, we're sending you to this mandatory EAP referral because we think you have a disability. Secondly, it cites behavioral concerns and the impact that her conduct was having on herself and on others. That's not direct evidence. That's indirect evidence. Indirect evidence means that we apply the test. And the second step of the test is whether there is a legitimate nondiscriminatory reason for the adverse employment action. We certainly can meet that test here. The termination, as we just established, was motivated by her not signing this mandatory form, which was a term and condition of her employment. Can easily make that show. And then the last part is, is there evidence of pretext? And as you just heard from my colleague, we're not even arguing pretext here. But there's a piece of pretext that I think is important for the Court to know that goes directly to the merits here, which is, this mandatory referral form is not something that SEL only utilized in this form of situation where somebody is potentially thought to be in distress. The example that I talked about at the beginning of somebody who has an anger management problem, bullying behavior, just months before Ms. Shear was told that she needed, as a term and condition of her employment, to go to the EAP, SEL did the same thing with another employee, an employee who had that type of behavior, who was bullying. That employee went to the EAP and signed the exact same form that Ms. Shear was asked to sign, and his employment continued on unabated. So there is certainly no evidence of pretext here under the record, and that is an independent basis on which this Court can affirm summary judgment. Thank you, Your Honor. Thank you, Counsel. Rebuttal? Go ahead and add two minutes. Your Honor, in response to Mr. Gartenberg's contention that Ms. Shear wasn't worse off, she was labeled. She was labeled as suicidal. And we all understand in today's world that being labeled when it's something that's not true has its own price. There's a loss of autonomy. Every adult makes decisions about personal issues, and Ms. Shear's ability to exercise autonomy over her own personal issues was being stepped upon by her employer, and that is paternalism writ large. There are some record items I want to point out to the Court in my remaining time. Can you address his final points first, that it doesn't really matter what we do on this, that there's no direct evidence and you're not claiming pretext? Your Honor, it would be against all of the courts of appeal that have dealt with safety-related issues. And, in fact, that was the point I was going to make, is that the PIP talks about what Ms. Shear was being accused of, talked of suicide to multiple members of the team, raising concerns for her safety. There's nothing in the PIP about her being a disruptive force. So from the perspective of the employer sent her to the EAP over these allegations of suicide, that's the safety situation that Judge Costa mentioned in the null versus BNSF. And my last point is that Paragraph 77 and 80 in the facts section of my brief set forth very specifically that SEL was going to control her treatment. Thank you. Thank you, counsel. Thanks to all three of our counsel today. We appreciate your arguments, and they've been very helpful. The case will be submitted, and counsel are excused. We will take a 10-minute break. We'll come back about 5 till 11.